# ROBERT GRAHAM

*v.*

# RAFAEL GUTIERREZ DEL ARROYO ET AL.

---

San Juan, Equity, No. 672.

1. Specific performance of contract to convey land: Complainant entered into a contract with the main respondents to purchase from them, under certain terms and conditions, three different tracts of land. The contract could not be immediately carried out because of a large portion of the land described being under lease.. Complainant, expecting to be able to get the land, performed minor conditions of the contract, and went to considerable expense in planting and preparing fruit trees, etc., to be used thereon, but as the lessee would not relinquish his rights, considerable time elapsed and incidental occurrences took place, in which both parties were participants, before it was possible to get possession. Probably because the land had increased in value, respondents refused to make the conveyance, at least for the full quantities contracted for, after being repeatedly requested and the money tendered, thus forcing complainant to file his bill for specific performance, alleging his willingness to pay the contract price, etc. At the trial the parties came to an agreement as to two of the tracts, and disagreed as to the boundary lines of the third, which controversy was settled by the court on the evidence. Held, that the court has power to name an independent surveyor to go upon the ground and ascertain the quantity of land, and its boundaries, contracted for, under its findings on the evidence, and has power to tax the costs of such service against the party for whose benefit the service is required.

2. A. third party respondent who takes a lease of portions of the property, pending the existence of such a contract between complainant and the owners, with knowledge of the existence of the contract as found by the court, is bound by such contract, and takes no estate as against such complainant.

3. See the opinion for the facts surrounding the transaction.

*Opinion filed May 7, 1910.*

*Messrs. Sweet & Wilcox,* solicitors for the complainant.

*Mr. C. M. Boerman,* solicitor for the respondents.

RODEY, Judge, delivered the following opinion:

This is a bill in equity which was filed October 18, 1909. It is for the specific performance of a contract or agreement to purchase land. The answers of all the respondents were filed under date of December 4, 1909, and a trial was had on the issue thus raised, in open court before the chancellor, without the intervention of an examiner or master, under date of February 23, 1910. Thereafter the stenographer transcribed his notes, and counsel for the respective parties filed briefs which, together with the record, the exhibits, and the pleadings, we have just carefully gone over, and therefore are prepared to decide the cause on its merits.

The contract on which the suit is based is dated July 5, 1906, a translation of which from the Spanish is as follows:

### Memorandum.

In the city of San Juan, Porto Rico, the 5th day of July, 1906, Don Rafael Gutierrez del Arroyo and Mr. Robert Graham agreed: 1st, Don Rafael Gutierrez del Arroyo compromised himself to sell to Mr. Robert Graham a parcel of his estate in Pueblo Viejo, which both parties have already fixed the boundaries of, and which may extend up to 70 or 75 cuerdas, at the price of $40 per cuerda. 2d, he also compromised himself to sell to him another small extension of land which they also fixed the boundaries of, and which may have an extension,

Graham v. Gutierrez del Arroyo.

approximately, of 14 cuerdas, at the price of $50 per cuerda. 3d, he also compromised himself to sell to him other 200 or 300 cuerdas of the same estate in that part of it which they have also already designated, at the price of $55 per cuerda. 4th, the parcels indicated in Nos. 1 and 2 shall be paid for in cash. The parcel indicated in the 3d number shall be paid for in instalments during the two years following the delivery of the document. Mr. Graham shall not pay any interest for the extended time of payment, but Mr. Arroyo shall remain in possession and usufruct of the part of the estate sold, and not paid for, until the payment shall be made. Mr. Graham shall execute a mortgage on the estate to secure the payment. 5th, this contract shall be extended into a public document as soon as Mr. Graham shall have consummated the deal which is now pending with Doña Felicia Fernandez for the purchase of an undivided part in the same estate. In case that deal should not be carried into effect, this contract will also remain without force or effect. 6th, this contract is also dependent upon the condition that Don Rafael Gutierrez del Arroyo can rescind the contract of lease which he now has with Eleuterio Landrau.

(Signed)    Robert Graham.

Rafael Gutierrez del Arroyo.

The third respondent, Robledo, is made a party only because he became lessee of some of the property that is in controversy, after the making of the contract, but before its fulfilment, but, as complainant contends, with full notice of the latter's rights.

It will be seen that by this contract the first two named respondents agree to sell three parcels of land to the complainant, one of 70 or 75 cuerdas, at the price of $40 per cuerda, an-

Graham v. Gutierrez del Arroyo.

other of 14 cuerdas, at the price of $50 per cuerda, and another tract of land to be carved out of a larger estate, the portion contracted for to contain two or three hundred cuerdas, at $55 per cuerda. These several tracts were, it appears, a portion of a farm or finca known as "Pueblo Viejo Arriba," which contained probably seven or eight hundred cuerdas in all, situated in the barrio of Pueblo Viejo, in the district of Bayamon, south and across the bay from San Juan, Porto Rico. It will also be seen that, apart from the promise for a promise, which is a good consideration in law, part of the consideration to move from the complainant was the purchase by him of a small outstanding undivided interest of Felicia Fernandez, which she had in the larger tract, from which the two to three hundred cuerda tract was to be segregated.

We might state here that, while it is not mentioned in the contract, the evidence clearly showed that it was intended that, when complainant did purchase this outstanding undivided interest, it would not only clear the title to the piece he was to get, but it was intended that it should also clear the title to the balance of that larger tract that would then remain in the hands of the first two mentioned respondents, they, of course, to allow to complainant, in his payment for what he bought, a proper proportion of the purchase price of the outstanding interest, that should be charged to the portion which they retained.

It appeared in the evidence that, at the time this contract was made, most of the land contracted for was under lease to one Eleuterio Landrau, and which lease had considerable time, probably more than a year, still to run, and, as to the portion such lessee was interested in at least, the contract was not to be

Graham v. Gutierrez del Arroyo.

consummated, or at least complainant could not get complete possession of it until such lease had expired, and it was agreed that efforts should be made by the main respondents to induce him to give up the lease in the meantime, which it transpired he refused to do, and hence this caused considerable delay in and about the matter. It was in evidence that complainant went to a lot of expense in anticipation of getting the land, in the way of procuring fruit trees, nursery plants, etc., and that he finally organized a fruit company, and assigned all his rights under the contract in question to it, as a part of his contribution of capital thereto, and in many other ways went to heavy expense because of the contract.

It was also well in evidence that on the 27th of April, 1908, complainant had a supposed opportunity (which afterwards fell through) to sell the larger tract of land for a large advance on the price he was to pay therefor under the contract, and therefore complainant of his own free will, and simply as a favor to the main respondents, as he says, on that date made an addition to the third clause of the contract, that he would divide with them any sum he should sell the same for over and above the contract price of $55 per cuerda, as agreed upon.

It is useless for us to detail the evidence which is comprised in sixty-seven pages of typewritten transcript, because we can state the substance of it much easier. For one reason and another participated in by both parties, the contract was not consummated as soon as it ought to have been perhaps, but most of the latter part of the delay was caused by the respondents refusing to deed the quantities of land which they had agreed by the contract to transfer, and by a dispute as to whether or not the larger tract contracted for was to extend northward to the American Railroad, which borders it on that side.

During the trial the court saw so little dispute between the parties as that it expressed astonishment that they could not settle, and an agreement was arrived at by their answers in open court that the 14-acre tract will be transferred and accepted even if the same runs an acre or so short of the quantity, and that the 70 or 75 acre tract will also, in like manner, be transferred, but it is agreed that the same is to contain somewhere about 68 acres, leaving a certain roadway in possession of the grantors to comprise about 2 acres of what the tract was found to contain, which was some 70 acres. A large blue print plat or map was introduced in evidence as exhibit C for the respondents, and it is agreed that parcela No. 1 marked thereon is the same parcela said to contain 70 to 75 cuerdas, but which is marked on this map as containing 57–74/100 cuerdas, and that the deficiency of about 10 cuerdas occurs because the southwest corner line, instead of being turned to the northwest as it is on the map, ought to have continued southwest so as to include 10 additional acres. This the court finds to be the truth, and finds that complainant is entitled to have that quantity included therein. The portion marked parcela No. 5 is said to be properly delimited on the plat in question, and therefore there is no dispute about that.

The large tract marked parcela No. 4 is the one about which the dispute arises. It is bounded on the east by land belonging to a certain Mr. Cerecedo; on the south by land belonging to Mr. Wilson, but there is a tract marked parcela No. 7 on the map that is in dispute, and the land agreed to be conveyed lay to the north of that, and was to be high and dry ground, and bounded on the west by the lowlands that border the Quebrada Margarita, and was to extend northward to the railroad, as complain-

Graham v. Gutierrez del Arroyo.

ant claims, but only to near the road that runs into the siding, or in other words, to the end of the high ground, as respondents claim, thus leaving some 10 cuerdas or more between its north line and the railroad right of way.

On page 67 of the transcript, the complainant stated in his own words to the court as follows:

I am perfectly willing to accept, at the prices named in the contract, 68 acres, as your honor and I have spoken of there, leaving Mr. Arroyo the entrance to that track; 68 out of the 70 acres. The 13-acre piece remains as outlined at the prices outlined. On the large piece I am willing to take whatever may be contained in the piece from Wilson's line to the railroad, and the highland only, such as Mr. Arroyo speaks of. It may contain 220. I am perfectly willing, within that limit, that you may define or put into such decision as you may cause the fact that I have got to leave that roadway open for public use, and in no manner hinder the use by other people.

The court: Q. You agree to leave that road to run with the land?

A. Yes, and they on their part agree to open the road in the same way. He has now got a rancho at the mouth of it, and he wants to take that away; the prices as per the contract. The price is 55.

It will thus be seen that there is not very much to settle in this case, save the quantity of land to be conveyed under this agreement for two or three hundred cuerdas, and its boundary lines, and we unhesitatingly hold on the evidence that it was understood at the time between the parties that that tract was

Graham v. Gutierrez del Arroyo.

to begin on the south at the north line of the land that is in dispute with Mr. Wilson, and running thence north to the railroad track, with the land of Cerecedo on the east as a boundary, and extending westward so as to include all the land that is high and dry, but little or none of the bottom lands that lie along the Quebrada Margarita, so that the whole tract will make, as complainant claims, about 220 cuerdas, more or less.

We also hold from the evidence that the road running from the west through the northwest corner of this tract, thus to be conveyed, to the railroad, was intended to be kept open, and complainant, in his agreement above set forth, agrees that this is true, and that he will accept a deed with a condition to that effect in it, but that respondents must in like manner keep that road open, and remove certain obstructions they are said to have in it near the railroad, and this we think is proper.

The question now arises as to the third respondent, Francisco Robledo. He, as stated, is the lessee. It appears that on the 10th of January, 1909, he entered into a six-year lease to begin on July 1st following, of practically this entire large estate mentioned above, save that there was specifically excluded from it the two smaller tracts mentioned in complainant's contract. This particular respondent denies absolutely that he had any knowledge of the outstanding contract in favor of complainant as to the larger tract of two to three hundred cuerdas, which is to be carved out of parcela No. 4 as aforesaid, and that therefore he is an innocent lessee for value. We have gone over the whole evidence again, and, of course, have a clear recollection of the evidence as given orally on the stand, and we are of opinion that this claim is unfounded. The lease to him was made in the office of the same lawyer who did all the business for the parties

to this suit from the beginning, and who knew all about the situation, and in the lease itself two of the parcels under contract to complainant (the smaller ones)· are specifically excluded therefrom, and complainant's contract to purchase the same specifically mentions them, and hence we regard it as extremely improbable that Robledo did not hear or know about the making of this contract or its existence as to the larger tract. In fact, under all the circumstances, we think he was put upon inquiry as to complainant's rights. Complainant, on seeing this respondent lessee go into possession of the land and attempt to plant it, immediately protested, and, on the whole, the evidence as shown by the record is such as to induce us to believe that the principal respondents and this lessee just took chances that complainant's rights would not be enforced, and we have reasonable ground to believe that there is an understanding or bargain between them to the effect that the lessee shall not suffer, because little or no cultivation was put by the lessee on the high and dry portion of parcela No. 4, evidently leaving that until it should be determined what would become of complainant's claim thereto.

On the whole case, therefore, we feel that complainant has proved every material allegation of his bill as against all the respondents, and we so find, and that the main respondents should be required to deed the three tracts of land for the prices specified in the contract and in quantities as per the agreement of complainant supra, because we are of opinion that, as the evidence shows that complainant did not make the sale for more than $55 of the larger tract, but turned it into a company he had organized, at the original contract price, he should not be obliged to pay any more therefor. We further hold that,

Graham v. Gutierrez del Arroyo.

as a condition to this, complainant must deed the undivided interest he purchased from Felicia Fernandez to the main respondents as to that portion that remains in their possession after his part has been deeded to him, he to be allowed in his payments for what he gets the proper relative portion of what he paid for said Felicia's undivided interest in the portion that remains to respondents.

We hold that the matter of damages for actual plowing or planting, if any, between Robledo and the main respondents is not an issue in this suit, because as to this complainant we hold that Robledo had knowledge which binds him.

In his brief, counsel for complainant requests the court to order a survey at the joint expense of the parties and a report thereon, and we think this request is just, save that we think the costs ought to be entirely charged to complainant, because it is, under the circumstances, entirely for his benefit, and therefore we will name a surveyor who will go to the ground, the parties to be present if they desire, and who will survey the high and dry ground northward from the line of parcela No. 4, excluding the tract that is in dispute, as per the map, with Mr. Wilson, and, using the Cerecedo line as an eastern line, measure the high and dry ground northward to the right of way of the railroad, and running the westerly line at a point that will make the area be about 220 cuerdas or so, and, if possible, have this line include a small portion of the most easterly part or bend of the Quebrada Margarita, even though that should make the whole area slightly more than 220 cuerdas. And on the incoming and approval of such plat, counsel for the complainant will prepare a decree making all the findings of fact and law as in this opinion set forth, and requiring all things to be done

as thereby intended, within a time certain, or in default, providing as may be proper for the making of the deeds by the court for the parties.

The main costs of the case will, of course, go with the decree, save that as aforesaid the survey shall be at the expense of complainant. The cause will be retained for all proper purposes.